# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**RENÉ GAINES (#108989)**                                    **CIVIL ACTION NO.**

**VERSUS**                                                          **23-229-JWD-EWD**

**JAMES M. LeBLANC, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 27, 2024.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**RENÉ GAINES (#108989)**                    CIVIL ACTION NO.

**VERSUS**                                    23-229-JWD-EWD

**JAMES M. LeBLANC, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Complaint, filed by René Gaines ("Gaines"), who is representing himself and who is confined at the Louisiana State Penitentiary in Angola, Louisiana ("LSP"). Based on the screening allowed by 28 U.S.C. § 1915(e) and required by 28 U.S.C. § 1915A, it is recommended that Gaines's federal claims be dismissed as legally frivolous and for failure to state a claim and that the Court decline to exercise supplemental jurisdiction over any potential state law claims.

### I.    BACKGROUND

Gaines filed this suit on or about March 23, 2023 against James M. LeBlanc, Timothy Hooper, Chad Darbonne, Willard Gauthier, Todd Moreau, and Unknown Demars alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983.[1] Specifically, Gaines alleges that he was transferred within LSP in retaliation for writing a letter to the warden requesting information about the waiting list to be assigned a bottom bunk. Gaines requests monetary, injunctive, and declaratory relief.[2]

---

[1] R. Doc. 1. Because the Court initially misread "Demars" as "Dennis," on May 17, 2023, Gaines filed an amended complaint clarifying the correct name of that defendant. R. Doc. 4.

[2] R. Doc. 1, p. 8.

II.    LAW & ANALYSIS

A.  Standard of Review

This Court is authorized to dismiss a claim by a prisoner against a governmental entity or an officer or employee of a governmental entity, or by any other plaintiff who has been granted IFP status, if the claim is frivolous, malicious, or fails to state a claim upon which relief may be granted.[3]  The screening process gives the court the ability early in the case to separate those claims that may have merit from those that lack a basis in fact or in law.  Dismissal of any claim that does not pass screening may be made before service of process or before any defendant has answered.  Gaines has sued government officials and prison employees, so his claims are subject to the screening process.

To determine whether a complaint fails to state a claim for purposes of screening under §§ 1915(e) and/or 1915A, courts apply the same standard used for dismissal under Federal Rule of Civil Procedure 12(b)(6).[4]  This means the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.[5]  To survive screening, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] For a complaint to survive dismissal, it must contain enough factual information to raise a

---

[3] 28 U.S.C. §1915(e) provides for dismissal of claims that are frivolous, malicious, or fail to state a claim where the plaintiff was granted leave to proceed *in forma pauperis* ("IFP").  28 U.S.C. §1915A provides for dismissal of claims by prisoners against a governmental entity or employee of a governmental entity for the same reasons regardless of the pauper status of the plaintiff.  Gaines was granted IFP status on May 26, 2023, so both statutes apply.  R. Doc. 5.
[4] *Bazrowx v. Scott,* 136 F.3d 1053, 1054 (5th Cir. 1998) (recognizing that the standards for determining whether a complaint fails to state a claim for relief are the same under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A and Fed. R. Civ. P. 12(b)(6).
[5] *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996).
[6] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).
[7] *Id.*

reasonable expectation that discovery will provide evidence of each element of the plaintiffs' claim.[8]

### B. Gaines Cannot State a Claim Against Defendants because of their Supervisory Roles

Gaines named James M. LeBlanc and Timothy Hooper in his Complaint but does not explain anything he believes these defendants did or did not do to commit constitutional violations against him.[9] It appears LeBlanc and Hooper were named because of their supervisory roles as the Secretary of the Louisiana Department of Public Safety and Corrections and Warden of LSP, respectively. Supervisory officials may be held liable under § 1983 only if they affirmatively participate in acts that cause constitutional deprivation or implement unconstitutional policies that cause the plaintiff's injury.[10]  An allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is not enough to state a claim under § 1983.[11]  Further, if the supervisory official did not directly participate in an alleged constitutional violation, an inmate plaintiff must be able to show he was deprived of his constitutional rights because a subordinate applied the supervisor's affirmative wrongful policies or because of a breach by the supervisor of an affirmative duty imposed by state law.[12]  To hold a supervisory official responsible based on a policy, the policy must be so deficient that it can be seen as the moving force behind the alleged constitutional violation.[13]

---

[8] *AGEM Management Services, LLC v. First Tennessee Bank Nat. Ass'n*, 942 F.Supp.2d 611, 617 (E.D. La. April 25, 2013), citing *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 255-57 (5th Cir. 2009).
[9] R. Doc. 1.
[10] *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).
[11] *See Iqbal*, 556 U.S. at 676 (2009), citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").
[12] *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).
[13] *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).

3

Gaines does not allege that LeBlanc or Hooper established any policies, much less policies so deficient that the policy itself constitutes a denial of constitutional rights. Gaines only references that he sent a letter to Hooper, which was the alleged reason for retaliation by Willard Gauthier.[14] Because Gaines does not allege any facts to show that either LeBlanc or Hooper were involved in any alleged constitutional violation, nor does he allege that any policy implemented by LeBlanc or Hooper was the cause of the alleged constitutional violation, any federal constitutional claims against these defendants should be dismissed.

### C. Gaines Has Not Stated a Claim Against Moreau or Darbonne[15]

As to Todd Moreau, Gaines says only that Moreau placed Gaines's name on the waiting list for a bottom bunk in 2019, and on August 19, 2022, when Gaines sought information regarding the waiting list from Moreau, Gaines could not get a straight answer.[16] As to Chad Darbonne, Gaines only says that Darbonne was present when Gaines questioned Moreau about the bottom bunk waiting list in August 2022 and that Darbonne assigned Gaines to his specific dormitory at the main prison.[17] Because the allegations against Moreau and Darbonne do not state any claim of constitutional dimension, any federal constitutional claims against these defendants should also be dismissed.

### D. Gaines has Not Stated a Claim for Deliberate Medical Indifference

It is unclear whether Gaines intended to state a claim for deliberate indifference to a serious medical need based on bleeding from his incision because he was ordered to pack his belongings

---

[14] R. Doc. 1, p. 4.
[15] This Report and Recommendation does not read the Complaint as Gaines trying to state a claim because he was not assigned a bottom bunk because Gaines does not provide any details to show why he should have been assigned a bottom bunk or to show that the failure to give him a bottom bunk rose to the level of a constitutional or federal violation. Rather, he appears to take issue with the events that happened after he asked about his bunk assignment. *See* R. Doc. 1.
[16] R. Doc. 1, p. 4.
[17] R. Doc. 1, pp. 4 & 7.

shortly after surgery.[18] To the extent Gaines intended to do so, he cannot state a claim in that regard.[19]  To establish liability for deliberate medical indifference, an inmate plaintiff must show "subjective recklessness as used in the criminal law."[20] The claim must meet both an objective test and a subjective test.[21] To meet the objective test, a plaintiff must show that the alleged constitutional deprivation was, objectively, "sufficiently serious."[22] To meet the subjective test, a plaintiff must show that prison officials acted with a "sufficiently culpable state of mind."[23] Whether the plaintiff has received the treatment or accommodation that she desires is not enough to state a claim for deliberate indifference unless there are exceptional circumstances.[24] Even negligence, neglect, unsuccessful treatment, or medical malpractice, will not generally establish deliberate medical indifference.[25] Rather, the deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct" that would clearly show a complete disregard for any serious medical needs.[26]

Gaines alleges that he had surgery to remove a cyst from his chest. The same day, after his surgery, Gauthier ordered him to pack his property to go to the main prison.[27]  While packing, the incision from surgery began bleeding.[28]  Gaines reported the bleeding, and Lt. Turner (not a named defendant) called "the prison infirmary and was advised that plaintiff had just under-went surgery

---

[18] R. Doc. 1, p. 6.
[19] It appears any potential claim for deliberate indifference to a serious medical need would be directed only at Gauthier.
[20] *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994).
[21] *Id.* at 837.
[22] *Id.* at 834, quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).
[23] *Id.*
[24] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations omitted).
[25] *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).
[26] *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).
[27] R. Doc. 1, p. 6.
[28] R. Doc. 1, p. 6.

5

to have a cyst removed and needed to lye [sic] down in order for the bleeding to stop."[29]   That information was given to Gauthier, who then told Gaines to "go lay down a while then pack your sh*t."[30]   Gaines does not allege that Gauthier knew Gaines had surgery to remove a cyst earlier on November 10, 2022 when Gauthier told Gaines to go and immediately pack his belongings to be transferred to the main prison. According to Gaines, when Gauthier was given this information, he instructed Gaines to lay down, as apparently recommended by prison medical staff.[31]   This information does not state a claim for deliberate indifference to a serious medical need.  To the contrary, according to Gaines, Gauthier listened to Gaines's complaint about his incision bleeding and followed the recommendation of medical professionals by telling Gaines to lay down.  Gaines says that he laid down for a couple of hours before he was told by Lt. Turner to continue packing his belongings.  Additionally, Gaines does not say that he had any further issues with the incision after he was given a chance to lay down.[32]   Accordingly, any federal constitutional claim for deliberate indifference to a serious medical need should be dismissed for failure to state a claim.

### E.  Gaines Cannot State a Claim for Retaliation

Gaines alleges that defendants retaliated against him by transferring him to the main prison camp from Camp F because he wrote a letter to Hooper inquiring about the waitlist for bottom bunks.[33]   Courts regard claims of retaliation by prison inmates with skepticism, so as not to put

---

[29] R. Doc. 1, p. 6.
[30] R. Doc. 1, p. 6.
[31] R. Doc. 1, pp. 5-6.
[32] R. Doc. 1, p. 6.
[33] R. Doc. 1, pp. 4-7.  Gaines also mentions that he was not allowed to gather his hobby shop supplies or properly store them, but he does not say anything further regarding those items. R. Doc. 1.  To the extent those items were lost, Gaines would not be able to state a claim for damages related to the lost items due to what is commonly referred to as the "Parratt/Hudson Doctrine."  *Hudson v. Palmer,* 468 U.S. 517, 533 (1984); *Parratt v. Taylor,* 451 U.S. 527, 542 (1981).  The "Parratt/Hudson Doctrine" essentially provides that due process is not violated if a state actor takes someone's property if there is an adequate state law remedy.   Further, to the extent Gaines is alleging that any loss of those items was a retaliatory act, Gaines cannot state a claim because, to the extent anything was lost, Gaines has not alleged facts to demonstrate that the loss of property was intended by any defendant.

federal courts in the middle of every adverse action that happens in the prison.[34]  To prevail on a claim of retaliation, a prisoner must show (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis,*[35]was undertaken against the prisoner by the defendant, and (4) that there was causation, *i.e.,* that "but for" the retaliatory motive, the adverse action would not have occurred.[36]

### i. Defendant Gauthier

Regarding Defendant Gauthier, Gaines has alleged facts to meet three of the elements for a retaliation claim.  An inmate's constitutional right to complain to the warden of his institution is well established.[37]  Further, Gaines has alleged a chronology of events to show causation and that Gauthier intentionally retaliated against Gaines for exercising his constitutional right.[38]  However, the alleged act taken in retaliation—transferring Gaines to the main prison (and possibly back to a worse location in Camp F)—was not more than *de minimis*.[39]

While there is no 'bright line test' for determining when a retaliatory action exceeds the *de minimis* threshold, it is appropriate for the Court to consider the frequency of the occurrence and the length of duration of the retaliatory action.[40] A transfer to a more dangerous unit or job assignment may be more than *de minimis*, but a transfer to a less desirable job assignment is not.[41]

---

[34] *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995).

[35] For the retaliatory action to be 'greater than *de minimis*,' it must be more than a minor inconvenience.

[36] *Morris v. Powell,* 449 F.3d 682, 684 (5th Cir. 2006). *See also Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger,* 188 F.3d 322, 324–25 (5th Cir. 1999).

[37] *See Morris,* 449 F.3d at 684; *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995).

[38] *See* R. Doc. 1, pp. 5-6 (Gaines notes that Gauthier confronted Gaines and told him "We don't write letters outside the camp, so…you are being transferred to main prison east yard because we don't let people stay back here who write letters outside the camp.").

[39] R. Doc. 1, pp. 5-6.

[40] *See Gonzales v. Currie,* No. 13-201, 2014 WL 222353, at *5 (S.D. Tex. Jan. 21, 2014).

[41] *Morris,* 449 F.3d at 687.

Gaines first says he was transferred to the main prison, not segregated confinement or anything similar,[42] and he was only transferred for approximately three months.[43] It appears Gaines may also be complaining of the conditions of confinement in Camp F when he was transferred back from the main prison, perhaps as a second act of retaliation. He seems to say that the dormitory where he was assigned at Camp F when he was transferred back had plastic hanging from the ceiling to divert rainwater, there was a bucket in the aisle to catch rainwater, and that there were cobwebs and gnats in the dormitory.[44]

Gaines did not give any details about the conditions of his confinement at Camp F before his transfer to the main prison and his transfer back to Camp F. Even assuming the conditions were worse than the conditions at Camp F before the first transfer, Gaines has not alleged that the conditions were so bad as to equal a more dangerous unit or one that is so much less desirable that it passes the *de minimis* threshold. This finding is further supported by the fact that Gaines does not say that the main prison or the transfer back to Camp F subjected him to extreme hardship or serious health risks, as compared with what he experienced at Camp F before the first transfer.[45] Because he has not shown that any alleged retaliatory action was greater than *de minimis*, Gaines cannot state a claim for retaliation against Gauthier.

---

[42] Courts have found that under certain circumstances, extended time in segregated confinement could exceed the *de minimis* threshold. *See Hart v. Hairston*, 343 F.3d 762 (5th Cir. 2003).

[43] *See* R. Doc. 1, p. 7 (noting Gaines was transferred back to Camp F on February 17, 2023).

[44] R. Doc. 1, p. 7. To the extent his is actually intended to describe the conditions at the main prison, the result is the same.

[45] Retaliation could be actionable where the prisoner is forced to endure extreme hardship or is subjected to a greater risk of bodily harm—that is simply not the case here. *Compare Bibbs v. Early,* 541 F.3d 267, 272 (5th Cir. 2008) (subjecting inmate to below-freezing temperatures for more than four hours on four consecutive nights was more than *de minimis* ); *Parker v. Carpenter,* 978 F.2d 190, 192–93 (5th Cir. 1992) (transfer from low-risk minimum security section of jail to the overcrowded violent inmate section was actionable retaliation); *Jackson v. Cain,* 864 F.2d 1235, 1239, 1248 (5th Cir. 1989) (transfer from light labor job to a feed lot involving dangerous and intense work may state claim for retaliation).

### ii.  Defendant Demars

Though Demars was named as a defendant, the only action of Demars appears to be that she signed the order transferring Gaines from Camp F to the main prison.  Gaines has failed to allege facts to meet any necessary element of a retaliation claim as to Demars, except that Gaines was exercising a constitutional right.  Additionally, as with his retaliation claim against Gauthier, Gaines has not shown that the alleged retaliatory act of transferring him to the main prison (and possibly back to a worse location in Camp F) was more than *de minimis*.

Therefore, Gaines's federal constitutional claims against Gauthier and Demars for alleged retaliation should be dismissed for failure to state a claim.

### F.  Leave to Amend

Though "[o]rdinarily, a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed…[g]ranting leave to amend…is not required if the plaintiff has already pleaded her best case."[46]  It appears Gaines has already pleaded his best case.  He clearly laid out the facts about what he claims happened that he believes violated his constitutional rights. Despite pleading his best case, Gaines still fails to state a claim, so he should not be provided with further leave to amend.  However, out of an abundance of caution, to the extent Gaines believes he has additional facts that support his claims given the guidance in this Report and Recommendation, he should explain any additional facts by filing an objection to this Report and Recommendation within the fourteen (14) day period given.  Any additional facts will be considered by the Court before a final ruling is issued.

---

[46] *Wiggins v. Louisiana State University—Health Care Services Division*, 710 Fed. Appx. 625, 627 (5th Cir. 2017) (internal quotation marks omitted).

### G.  Exercise of Supplemental Jurisdiction Should be Declined

To the extent that Gaines seeks to have the Court exercise supplemental jurisdiction over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.   District courts are given "wide latitude" in their disposition of state law claims,[47] and "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial."[48] Having recommended that all Gaines's federal claims be dismissed for failure to state a claim, it is further recommended that the Court decline to exercise supplemental jurisdiction over any potential state law claims.

### <u>RECOMMENDATION</u>

**IT IS RECOMMENDED** that the exercise of supplemental jurisdiction be declined, and that Gaines's federal claims be **DISMISSED, WITH PREJUDICE**, for failure to state a claim based on screening under 28 U.S.C. §§ 1915(e) and 1915A.[49]

Signed in Baton Rouge, Louisiana, on September 27, 2024.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[47] *See Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011), quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966).

[48] *Brookshire Bros. Holding v. Dayco Prod., Inc*., 554 F.3d 595, 602 (5th Cir. 2009); *see also Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989))).

[49] Gaines is advised that 28 U.S.C. § 1915(g) provides that, "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [Proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  Should this Report and Recommendation be adopted, the Ruling in this matter will count as a strike.